**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SOMERA CAPITAL MANAGEMENT, LLC**  Plaintiff,  v.  **SOMERA ROAD, INC.**  Defendant. | Civil Action No.: 19-CV-8291  **COMPLAINT**  **Jury Trial Demanded** |

Plaintiff Somera Capital Management, LLC ("Somera"), as and for its Complaint against Defendant Somera Road, Inc. ("SRI"), hereby states as follows.

## NATURE OF THE CASE

1. This action arises out of Defendant SRI's unlawful and infringing use of the mark and name "Somera," both by itself and as part of the formative marks "Somera Road" and "Somera Road, Inc.," which is confusingly similar to Plaintiff's SOMERA and SOMERA CAPITAL MANAGEMENT® trademarks. SRI has co-opted Somera's mark for use in exactly the same narrow field – namely, capital management of domestic real estate investments. Unsurprisingly, confusion has occurred in the marketplace as a result, threatening the distinctive nature of Somera's marks and the valuable goodwill accrued through over 25 years of continuous use. Somera demanded that SRI cease use of its infringing marks, but SRI refused. As a result, Somera brings this action for injunctive relief and damages against SRI for trademark infringement pursuant to 15 U.S.C. § 1114, unfair competition and false designation of origin pursuant to 15 U.S.C. § 1125(a), and related state law violations.

## JURISDICTION

2. This Court has subject matter jurisdiction over this action because it arises under the trademark laws of the United States, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. This Court also has subject matter jurisdiction based upon complete diversity of citizenship of the parties hereto under 28 U.S.C. § 1332(a) because the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of costs and interest, and the parties are domiciliaries of different states. This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a), as the state law claims form part of the same case or controversy and arise from a common nucleus of operative facts.

## VENUE

3. Venue is properly laid in the United States District Court for the Southern District of New York pursuant to the provisions of 28 U.S.C. § 1391(a), (b), and (c).

## PARTIES

4. Plaintiff Somera Capital Management LLC ("Plaintiff," "Somera Capital Management" or "Somera") is a California Limited Liability Company having its principal place of business at 115 W. Canon Perdido St., Santa Barbara, CA 93101.

5. Defendant Somera Road, Inc.. ("Defendant" or "SRI"), is a Delaware corporation having its principal place of business at 130 W 42nd Street, 10th Floor, New York, NY 10036.

## FACTS

**A.   Somera's Use of the SOMERA Marks**

6. Somera Capital Management is a boutique real estate investment firm in the business of acquiring and managing real estate investments on behalf of its principals and investor

partners. Somera targets investment properties on a nationwide basis, focusing on properties that have the ability to generate above market cash distributions through recapitalization or repositioning of the investment properties.

7. Since its 1994 founding, Somera has continuously used the SOMERA, SOMERA CAPITAL and SOMERA CAPITAL MANAGEMENT® marks (the "SOMERA Marks") in connection with its real estate investment and capital management services, including in its solicitation of investors and management of acquired properties. Somera also utilizes a logo which incorporates blue elements and the SOMERA Marks (the "SOMERA Logo"), as follows:



8. The name "Somera" was chosen for personal reasons by the Somera founder and bears no relationship to the commercial real estate investment services offered by Plaintiff. As such, the mark is neither descriptive nor suggestive of the services offered, and indeed has no meaning in the English language; rather, the term is fanciful or, alternatively, arbitrary – and as such the SOMERA Marks, which consist of or incorporate this fanciful term are inherently strong and entitled to a broad scope of protection.

9. Throughout its over 25 years of use, Somera has invested in the strength of its SOMERA Marks through extensive marketing efforts and efforts to build brand recognition. Such efforts include brochures, investor presentation materials, an online presence at www.someracapital.com, and participation in commercial real estate investment seminars and industry gatherings.

10. By virtue of Somera's consistent use of and investment in the SOMERA Marks spanning over 25 years, the real estate investment and capital management market has come to associate the SOMERA Marks exclusively with Somera, and the SOMERA Marks enjoy a high degree of name recognition.

11. Somera has achieved considerable success while trading under the SOMERA Marks. Since inception, Somera's business has surpassed $2 billion in total real estate asset value. The investment partnerships between Somera principals and its investor partners have been highly successful and profitable, exceeding $800 million in equity on over 100 transaction across the United States, and Somera has developed a reputation for sourcing unique real estate related investments that are structured to maximize capital appreciation and distributable cash flow. Somera is known, among other accolades, for an institutional level of execution and surety of performance that is invaluable to its ongoing operations. In view of its successes and hard-earned reputation, and over 25 years of use and investment in its brand, the SOMERA Marks represent valuable goodwill of Somera.

12. To protect its longstanding rights in its SOMERA Marks, Plaintiff availed itself of the protections of the United States Patent and Trademark Office ("USPTO") for the SOMERA Marks, as evidenced by the following federal trademark registration and pending applications:

- Registration No. 2,868,468 – SOMERA CAPITAL MANAGEMENT for real estate services; namely, management, operation, acquisition, investment; and financial investment in real estate companies in International Class 36, and real estate services; namely, development, supervision of construction management; and site selection, in International Class 37, registered August 3, 2004.

- Application Ser. No. 88/517,401 – SOMERA for real estate services, namely, real estate management, operation, and acquisition; financial investment in the field of real estate, in International Class 36, filed July 16, 2019.

- Application Ser. No. 88/517,323 – SOMERA for real estate development; construction management; real estate site selection, in International Class 37, filed

July 16, 2019. True and correct copies of a USPTO-issued certificate for the foregoing registration, and a TESS printout of the foregoing applications from the USPTO's website, are attached hereto as <u>Exhibit A</u> and are hereby incorporated by reference.

13. Plaintiff's U.S. registration for SOMERA CAPITAL MANAGEMENT® is valid, subsisting and in full effect. In addition, that registration has attained incontestable status, which constitutes conclusive evidence of Plaintiff's ownership of the mark SOMERA CAPITAL MANAGEMENT®, the validity of the mark and registration, and of Plaintiff's exclusive right to use the trademark SOMERA CAPITAL MANAGEMENT® in commerce for the services covered by Plaintiff's declaration of incontestability pursuant to 15 U.S.C. § 1115(b).

14. Plaintiff has principally come to be known in the commercial real estate investment market as SOMERA, namely, the shortened form of SOMERA CAPITAL MANAGEMENT, of which SOMERA is the lead and dominant term. Plaintiff's principals and employees identify themselves as SOMERA employees, and Plaintiff's marketing and investment materials use the short form SOMERA name. By way of example, Somera's home page on its website explains:

> Somera invests in properties that are well-located with sound physical and economic fundamentals, properties that have the ability to generate attractive levels of distributable cash, and properties to which Somera can add value by executing recapitalization or repositioning strategies.

15. Other market participants in the commercial real estate market, including investors, property owners, brokers and lenders, have come to perceive Plaintiff as SOMERA, and frequently refer to Plaintiff by that short-form name.

16. By way of example only:

5

- A December 19, 2005 article on Commercial Real Estate Direct provides in part: "Somera, a Santa Barbara, Calif., investment firm, expects to spend $6 million to renovate the property. . .," in reference to Somera's $65 million acquisition of a Dallas, Texas hotel.
  *See https://www.crenews.com/general_news/general/somera-capital-pays-65.5mln-for-dallas-hilton.html*

- A May 19, 2008 article in the Denver Business journal refers to "Tim Mitchell, senior vice president in Somera's Denver office, in respect of a shopping center renovation in Aurora Park, Colorado.
  *See https://www.bizjournals.com/denver/stories/2008/03/17/daily40.html*

- A January 22, 2013 article in Pere News refers to Somera by its shortened name in the article's title, "*Retail Still 'Viable,' Says Somera Spin-Out*," refers to comments of former Somera personnel regarding the real estate market.
  *See https://www.perenews.com/retail-still-viable-says-somera-spin-out/*

- An April 6, 2015 article in Hotel Business quotes a Somera investment partner as stating in reference to acquisition of a South Carolina hotel: "It is a classic case of a well-located asset that needs a comprehensive renovation and aggressive management to maximize its potential value. This is our second transaction with Somera and we look to furthering our relationship with them."
  *See https://www.hotelbusiness.com/wright-investment-properties-somera-capital-acquire-sc-comfort-inn/*

17. Because the SOMERA Marks are house marks, which identify all of Plaintiff's activities as opposed to only certain services, the SOMERA Marks are used in connection with all of Plaintiff's services and business related communications within the commercial real estate investment market in which Somera transacts business.

**B.     SRI's Use of the SRI Infringing Marks**

18. Defendant SRI holds itself out as a New York based commercial real estate investment firm which, on information and belief, commenced operations in or after 2016.

19. SRI is engaged in substantially the same business as Plaintiff Somera, targeting substantially the same owners of substantially the same real estate properties, and substantially the same investor classes and types to invest in such properties.

20. Like Somera, SRI targets real estate properties nationwide that create opportunities to generate attractive returns for its investors. Like Somera, SRI also targets properties nationwide for which recapitalization or repositioning would enable an increased rate of return to investors.

21. In view of these similarities, SRI and Somera target the same types and classes of owners of real estate properties, for putative acquisition, asset management, operation and investment. SRI and Somera also operate through the same types and classes of brokers through which proposals are made, and engage the same types and classes of vendors and other service providers within the commercial real estate market, including lenders, appraisers, insurers and the like.

22. Like Somera, SRI targets private investors to participate in the acquisition of the target properties. Somera and SRI solicit participation from the same types and classes of commercial real estate investors in this regard. Somera and SRI participate in the same types of investor conferences.

23. Because business type and model of SRI and Somera are substantially identical in all material respects within the same domestic nationwide commercial real estate market, SRI and Somera are competitors. SRI and Somera offer substantially the same services to substantially the same classes of consumers within substantially the same trade channels.

24. SRI trades under the SOMERA ROAD INC., SOMERA ROAD and SOMERA trademarks (the "SRI Infringing Marks"). In each instance, the dominant term in SRI's name is

SOMERA.  SRI does not identify itself by any other name that does not consist of or include the dominant term SOMERA.  SRI also utilizes a logo which incorporates the color blue and the SRI Infringing Marks as follows:



25.     Defendant SRI consistently identifies itself as SOMERA, in addition to the longer forms of SRI's name.  For example, SRI's website, www.someraroadinc.com, states in its "About Us" tab that SRI is

> focused on value-add and opportunistic transactions across all asset classes and geographies.  Somera targets off-market acquisitions previously impaired by some form of distress such as loan defaults, partnership disputes, and bankruptcy. . . . Somera takes an entrepreneurial and methodical approach to identify off-market real estate opportunities that generate above market returns for its investors.  With a disciplined and aggressive approach, Somera drives value through strategic asset re-positionings, targeted capital improvement plans, and best-in-class, hands-on asset management. Since its inception, Somera has acquired over $1.1 billion in real estate totaling approximately 11 million square feet across 32 markets.

26.     Numerous other sections of and passages in SRI's website refer to SRI only as SOMERA.  In addition, on information and belief, SRI personnel identify themselves in business telephone calls, written communications and in person communications as representatives of "Somera."

27.     As a result of Defendant SRI's use of a trade name in which the first and most dominant term is "Somera," and its consistent referral to itself as "Somera," third parties in and covering the commercial real estate market have likewise begun to refer to SRI as "Somera."

28. By way of example only:

- A February 12, 2019 article in The New York Times refers to a Tennessee investment of SRI, and states: "Somera mentioned the FedEx move in its news release disclosing the planned development." *See https://someraroadinc.com/wp-content/uploads/2019/02/New-York-Times-FedEx-Logistics-Establishing-New-HQ-in-Downtown-Memphis.pdf*

- Then next day, a February 13, 2019 article in The Daily Memphian quotes SRI founder Ian Ross as stating: "The parking that Somera and the Orgels and our team has to offer at The Clipper project can't be matched anywhere in Downtown Memphis." *See https://someraroadinc.com/wp-content/uploads/2019/02/Daily-Memphian-FedEx-Logistics-The-Clipper-are-variations-on-a-Downtown-theme-of-live-work-play.pdf*

- In a July 8, 2019 article in Cleveland.com regarding an Ohio development of SRI, a passage states: "In December 2017, City Council voted 4-3 to rezone the 8.5-acre Royalton Collection site to make the development possible. This came after Somera threatened to sue the city if council said no." *See https://someraroadinc.com/wp-content/uploads/2019/07/Red-Wing-Shoes-Spectrum-to-open-stores-in-Royalton-Collection-on-Ohio-82-in-Strongsville.pdf*

- An August 8, 2019 article in The Morning Call refers to an Allentown, Pennsylvania building recently acquired by SRI, and states: "The name Grand Plaza is a nod to the site's history, Somera said, since the property was originally home to the Grand Central Hotel, which dated to the 1890s." *See https://someraroadinc.com/wp-content/uploads/2019/08/PPL-Plaza-in-downtown-Allentown-has-a-new-name.pdf*

29. Defendant highlights its media coverage, including the aforementioned articles and other articles using the SRI Infringing Marks, on its someraroadinc.com website. *See https://someraroadinc.com/news/*.

**C.   Somera's Investigation and SRI's Refusal to Cease Use**

30. On information and belief, Defendant SRI's commercial activity was nominal prior to 2018. By way of example, of the over 40 articles highlighted and linked on SRI's website, only one article predates March 2018, which is dated October 30, 2017.

9

31. Somera first became aware of the nature and extent of Defendant SRI's infringing activities in late 2018 or early 2019, when Somera began receiving communications that were intended for Defendant SRI. The first such communication of which Somera is presently aware was a rent check from the tenant of a SRI-owned property which mistakenly sought to pay its rent by sending its rent check to Somera.

32. Upon receipt of such misdirected communications, Somera investigated the nature and extent of SRI's use of the SOMERA name, and ascertained that SRI, in using the SRI Infringing Marks, was using identical or substantially identical trademarks to the SOMERA Marks, for identical or substantially identical services, in the same domestic commercial real estate market, targeted to the same classes of real estate property owners, investors, brokers, lenders and other participants in the commercial real estate investment market.

33. Defendant SRI's use of identical or substantially identical marks on the same services to the same classes of consumers and market participants through the same trade channels creates a likelihood that the public to whom SRI markets, promotes and sells its services would be confused, deceived or mistaken into believing that Defendant SRI's services are rendered, sponsored, authorized, licensed or approved by Plaintiff Somera, to the irreparable harm of Somera.

34. On information and belief, Defendant SRI was aware of Somera's use of the SOMERA Marks at the time it adopted and commenced use of the SRI Infringing Marks. Indeed, in view of Somera's prominent position in the domestic commercial real estate investment market, it is inconceivable that SRI would have been unaware of such use. Moreover, SRI was on record notice by virtue of Somera's United States trademark registration issued in 2004.

35. On information and belief, Defendant SRI selected the SRI Infringing Marks in order to trade off the goodwill and reputation acquired by Somera through decades of use and numerous successful real estate acquisitions and investment management. In addition to SRI's prior awareness of Somera's longstanding ownership and use of the SOMERA Marks, the name "Somera" bears no rational relationship to the provision of commercial real estate investment services and is fanciful in nature, such that it is inconceivable that a new participant in the exact same narrow field of commercial real estate investment services would happen to choose, by sheer coincidence, the same fanciful term to identify its services to the public. Defendant SRI even went so far as to incorporate the same color scheme and appearance, consisting of a design with shades of blue alongside a prominent display of "Somera," in its logo and marketing materials. This is willful and intentional trademark infringement on the part of Defendant SRI.

36. Because Defendant SRI uses the SRI Infringing Marks as a house mark, uses such marks in connection with all of the services it offers, it follows that all of the profits earned by Defendant SRI have been earned because or substantially as a result of Defendant's use of the SRI Infringing Marks and in violation of Somera's longstanding rights in the SOMERA Marks.

37. Because Defendant SRI's use of the SRI Infringing Marks creates a likelihood of confusion, Somera sent a cease and desist letter to SRI on January 24, 2019, a true and correct copy of which is attached as Exhibit B. In this letter, Somera demanded that SRI immediately cease its infringing activity, lest Somera be forced to file suit.

38. Defendant SRI responded by letter dated April 8, 2019, refusing to cease and desist. A true and correct copy of SRI's letter is attached as Exhibit C hereto.

39. Subsequent to the April 8, 2019 letter, additional communications took place between the parties, but Defendant SRI continued to refuse to cease use or otherwise remedy its ongoing trademark infringement.

40. Since the original January 24, 2019 cease and desist letter, numerous additional instances of actual confusion have taken place, in that Somera has received multiple communications indicating confusion as between Somera and SRI, and the source of the services identified by the SOMERA Marks and the SRI Infringing Marks respectively.

41. At the time of the filing of this Complaint, Defendant SRI has maintained its refusal to cease use of the SRI Infringing Marks despite repeated demands by Somera.  Plaintiff has satisfied all conditions precedent to bringing this action.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
## UNDER § 32(1) OF THE LANHAM ACT

42. The allegations contained in preceding paragraphs are incorporated herein by reference.

43. Defendant's activities constitute infringement of Plaintiff's federally registered SOMERA CAPITAL MANAGEMENT® trademark in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).  Defendant's unauthorized use of the SRI Infringing Marks is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Defendant and Plaintiff's federally registered mark.

44. Due to Plaintiff's longstanding and continuous use of its federally registered marks, consumers and the public understand the SOMERA CAPITAL MANAGEMENT® trademark to identify Somera as the exclusive source of SOMERA CAPITAL MANAGEMENT® services.

45.     Defendant uses the SRI Infringing Marks for commercial real estate investment services that are identical or virtually identical to Plaintiff's services.

46.     As a result of Defendant's willful and wrongful conduct, Somera has suffered and continues to suffer substantial loss. Somera is therefore entitled to recover damages, together with any and all profits obtained by Defendant as a result of its infringement of Plaintiff's rights.

47.     Defendant's willful acts alleged herein have irreparably injured Plaintiff's business, reputation, and goodwill, and will continue to do so unless and until they are permanently enjoined. Plaintiff has no adequate remedy at law. Therefore, Plaintiff is entitled to injunctive relief.

48.     As a result of Defendant's intentional and willful misconduct, undertaken by a direct competitor to Plaintiff, resulting in actual confusion and other harms, as well as repeatedly disregarding multiple attempts to resolve this matter without resorting to litigation, this action should be deemed an exceptional case such that Plaintiff is entitled to recover treble damages and/or profits and attorneys' fees.

## COUNT II
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER § 43(a) OF THE LANHAM ACT

49.     The allegations contained in preceding paragraphs are incorporated herein by reference.

50.     Defendant's unauthorized use of the SRI Infringing Marks constitutes unfair competition and false designation of origin in respect of Plaintiff's SOMERA Marks, because said use is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's commercial activities, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51. Defendant's unauthorized use of the SRI Infringing Marks is willful.

52. As a result of Defendant's willful and wrongful conduct in respect of Plaintiff's SOMERA Marks, Plaintiff has suffered and continues to suffer substantial loss. Plaintiff is therefore entitled to recover damages, including any and all profits obtained by Defendant as a result of its infringement of Plaintiff's rights.

53. Defendant's willful acts alleged herein have irreparably injured Plaintiff's business, reputation, and goodwill, and will continue to do so unless and until it is permanently enjoined. Plaintiff has no adequate remedy at law. Therefore, Plaintiff is entitled to injunctive relief.

54. As a result of Defendant's intentional and willful misconduct, undertaken by a direct competitor to Plaintiff, resulting in actual confusion and other harms, as well as repeatedly disregarding multiple attempts to resolve this matter without resorting to litigation, this action should be deemed an exceptional case such that Plaintiff is entitled to recover treble damages and/or profits and attorneys' fees.

## COUNT III
## COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT

55. The allegations contained in preceding paragraphs are incorporated herein by reference.

56. Plaintiff uses its SOMERA Marks in New York, and has used such marks since long prior to the adoption of the SRI Infringing Marks by Defendant. As a result, Plaintiff possesses common law trademark rights in New York that are superior to Defendant.

57. Defendant uses in commerce a mark that is identical to Plaintiff's mark in the case of the standalone mark SOMERA, and otherwise uses in commerce the SRI Infringing Marks that

are substantially similar or to Plaintiff's SOMERA Marks on substantially identical services through the same trade channels and targeting and/or involving the same consumers and market participants in the commercial real estate investment services market.

58. Defendant's unauthorized use of the SRI Infringing Marks to identify its commercial real estate investment services is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Defendant and Plaintiff in violation of Plaintiff's common law rights within New York.

59. As a result of Defendant's willful and wrongful conduct, Plaintiff has suffered and continues to suffer substantial loss. Plaintiff is entitled to recover damages, including any and all profits obtained by Defendant as a result of its violation of Plaintiff's rights.

60. Defendant's willful acts alleged herein have irreparably injured Plaintiff's business, reputation, and goodwill, and will continue to do so unless and until it is permanently enjoined. Plaintiff has no adequate remedy at law, and Plaintiff is entitled to injunctive relief.

## COUNT IV
## VIOLATION OF N.Y. GEN. BUS. LAW § 349

61. The allegations contained in preceding paragraphs are incorporated herein by reference.

62. Defendant uses in commerce a mark that is identical to Plaintiff's mark in the case of the standalone mark SOMERA, and otherwise uses in commerce the SRI Infringing Marks that are substantially similar or to Plaintiff's SOMERA Marks for substantially identical services through the same trade channels and targeting and/or involving the same consumers and market participants in the commercial real estate investment services market.

63. Defendant's unauthorized use of the SRI Infringing Marks to identify its commercial real estate investment services is directed towards New York consumers and is likely

to cause confusion, mistake, or deception as to the affiliation, connection, or association between Defendant and Plaintiff in violation of N.Y. Gen. Bus. Law § 349, prohibiting deceptive acts and trade practices.

64. Defendant's unauthorized use of the SRI Infringing Marks to identify its commercial real estate investment services constitutes materially a misleading representation by Defendant as to the source or affiliation of its services. Defendant's deliberate deception of New York consumers constitutes harm to the general public interest.

65. Defendant's willful acts alleged herein have irreparably injured Plaintiff's business, reputation, and goodwill, as well as the general public interest, and will continue to do so unless and until it is permanently enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Somera Capital Management, LLC prays:

1. That this Court grant a nationwide preliminary and permanent injunction enjoining Defendant and its owners, affiliates, partners, subsidiaries, associates, directors, officers, agents, servants, employees, successors, assigns, and all others under its control or acting in concert therewith or having knowledge thereof from offering any services under the SRI Infringing Marks or any other mark or logo consisting of, or substantially similar to, Plaintiff's SOMERA Marks, alone or in combination with any other term, symbol, or design pursuant to 15 U.S.C. § 1116.

2. That this Court grant a nationwide preliminary and permanent injunction enjoining Defendant and its owners, affiliates, partners, subsidiaries, associates, directors, officers, agents, servants, employees, successors, assigns, and all others under its control or acting in concert therewith or having knowledge thereof from committing any other act that is likely to cause confusion, mistake or deception pursuant to 15 U.S.C. § 1116.

3. That this Court order Defendant to deliver up to Plaintiff for destruction all packaging, labels, signs, promotional materials, advertisements, brochures, investment materials, and other communications to the public in its possession or under its control bearing any material or representations that are or may be false or misleading as to Plaintiff's association with Defendant in any way or infringe Plaintiff's trademark rights complained of herein.

4. That this Court order Defendant to assign to Plaintiff any and all domain name consisting of or including the term or consecutive letters SOMERA, including but not limited to someraroadinc.com.

5. That this Court award Plaintiff damages and direct Defendant to account for and turn over all profits derived by Defendant as a result of its wrongful conduct complained of herein.

6. That this Court enter an order placing reasonable but effective restrictions on the future transactions and activities of Defendant so as to prevent fraud on the Court and so as to ensure the capacity of Defendant to pay, and the prompt payment of, any judgment entered against Defendant in this action.

7. That Plaintiff be awarded compensatory damages as well as profits earned by Defendant in connection with any all amounts earned wherein any of the SRI Infringing Marks were used, which Plaintiff understands to be all such services.

8. That Plaintiff be awarded punitive damages for the willful and wanton acts of unfair competition and other unlawful injurious acts of Defendant complained of herein.

9. That this Court declare this to be an "exceptional case" and award Plaintiff its attorney's fees and the costs of this action, and treble Plaintiff's award of damages and/or profits, pursuant to § 35 of the Lanham Act, as amended, 15 U.S.C. 1117.

10. That this Court grant Plaintiff such other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Somera Capital Management LLC demands a trial by jury on all issues so triable.

Dated: New York, New York
September 5, 2019

DRINKER BIDDLE & REATH LLP

/s/ Thuy T. Bui
Thuy T. Bui
1177 Avenue of the Americas, 41st Floor
New York, NY 10036-2714
Tel: (212) 248-3140
thuy.bui@dbr.com
*Attorneys for Plaintiff*

Of Counsel:
Brian A. Coleman (*pro hac vice to be filed*)
Tore T. DeBella (*pro hac vice to be filed*)
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Suite 1100
Washington, DC 20005
(202) 842-8800
(202) 842-8465 (facsimile)
*Attorneys for Plaintiff*