UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SOMERA CAPITAL MANAGEMENT, LLC,           :

                                          :        REPORT AND
                                                   RECOMMENDATION
          Plaintiff,                      :
                                                   19 Civ. 8291 (GHW) (GWG)
     -v.-                                  :

                                          :
SOMERA ROAD, INC.,
                                          :

Defendant.                                :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff Somera Capital Management, LLC ("SCM") brought this lawsuit against

Somera Road, Inc. ("SRI") alleging statutory and common law trademark infringement claims.

SRI filed an answer to the complaint in which it alleges counterclaims for (1) "Abandonment of

the SCM Applications" (the "applications counterclaim") and (2) "Cancellation of the SCM

Registration in Whole or in Part" (the "registration counterclaim").  SCM now moves to dismiss

both counterclaims under Federal Rule of Civil Procedure 12(b)(6).[1]  For the reasons that follow,

SCM's motion should be granted as to the registration counterclaim but denied as to the

applications counterclaim.

_____

        [1]  See Complaint, filed Sept. 5, 2019 (Docket # 1) ("Compl."); Answer to Compl., filed
Nov. 12, 2019 (Docket # 12) ("Answer"); Motion to Dismiss Counterclaims, filed Dec. 3, 2019
(Docket # 22) ("Motion"); Memorandum of Law in Support of Motion, filed Dec. 3, 2019
(Docket # 23) ("SCM Mem."); Declaration of Brian Coleman in Support of Motion, filed Dec. 3,
2019 (Docket # 24); Memorandum of Law in Opposition to Motion, filed Dec. 17, 2019
(Docket # 25) ("SRI Opp."); Declaration of Constance Lindman in Opposition to Motion, filed
Dec. 17, 2019 (Docket # 26); Reply Memorandum in Support of Motion, filed Dec. 26, 2019
(Docket # 28) ("SCM Reply").

I. <u>FACTS AS ALLEGED IN THE COUNTERCLAIMS</u>

We assume the allegations in SRI's counterclaims are true for purposes of this motion. <u>See</u>, <u>e.g.</u>, <u>Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liber.</u>, 23 F. Supp. 2d 439, 445 (S.D.N.Y. 1998).

SCM owns United States Trademark Registration Number 2,868,468 (the "SCM registration") for the Somera Capital Management mark (the "SCM mark") in standard character form.  Answer ¶¶ 8, 13.[2]  SCM also owns United States Trademark Application Serial Numbers 88/517,401 and 88/517,323 (the "SCM applications"), which are pending before the United States Patent and Trademark Office ("USPTO") for the mark "SOMERA" in standard character form.  <u>Id.</u> ¶¶ 9, 19.  The underlying complaint in this matter alleges that SRI is infringing on both the SCM and "SOMERA" marks.  <u>Id.</u> ¶ 10.

On the date of the application for the SCM registration, SCM represented to the USPTO that it was using the SCM mark in commerce for use "with 'real estate services; namely, management, operation, leasing, appraisal, acquisition, brokerage, investment, and valuation; and financial investment in real estate companies' in International Class 36 and 'real estate services; namely development, supervision of construction management; residential and commercial building construction and repair; and site selection' in International Class 37."  <u>Id.</u> ¶¶ 11, 13.  The USPTO initially refused approval of the SCM registration because the submitted specimen did not show use of the mark for identified services in International Class 37.  <u>Id.</u> ¶ 12.  The SCM registration was ultimately granted on August 3, 2004, for use with the applied-for

---

[2]  Paragraph numbers refer to the numbering that starts with the "Counterclaims" section of SRI's Answer.

services.  Id. ¶ 13.  On August 10, 2009, a Declaration of Use for the SCM registration was filed

pursuant to Section 8 of the Lanham Act for all registered services.  Id. ¶ 14.  On May 13, 2014,

a Combined Declaration of Use and Application for Renewal for the SCM registration was filed

pursuant to Sections 8 and 9 of the Lanham Act for all registered services.  Id. ¶ 15.  On July 16,

2019, a Declaration of Incontestability for the SCM registration was filed pursuant to Section 15

of the Lanham Act for use with a sub-set of all previously registered services, consisting of "real

estate services; namely, management, operation, acquisition, and investment; and financial

investment in real estate companies" in International Class 36 and "real estate services, namely,

development, supervision of construction management and site selection" in International Class

37.  Id. ¶ 16.  On September 5, 2019, a Request for Amendment to the SCM registration pursuant

to Section 7 of the Lanham Act was filed.  Id. ¶ 17.  That filing requested amendment of the

services identification to "real estate services; namely, management, operation, acquisition, and

investment; and financial investment in real estate companies" in International Class 36 and "real

estate services, namely, development, supervision of construction management and site

selection" in International Class 37.  Id.  An updated registration certificate for the SCM

registration was issued by the USPTO on October 29, 2019.  Id. ¶ 18.  Accordingly, the

Declaration of Incontestability matched the SCM registration with regard to registered services

after the updated certificate was issued on October 29, 2019.

On July 16, 2019, SCM made an application for the SOMERA mark, and represented to

the USPTO in the SCM applications that it was using the SOMERA mark in commerce for use

with "real estate services, namely, real estate management, operation, and acquisition; financial

investment in the field of real estate" in International Class 36 and "real estate development;

construction management; real estate site selection" in International Class 37.  Id. ¶¶ 19-20.  On October 8, 2019, the USPTO refused registration of the SCM applications because the specimens submitted by SCM did not show the SOMERA mark being used in commerce with respect to the identified services and did not show a direct association between the mark and the identified services.  Id. ¶ 21.

SRI alleges that, on the date the application for the SCM registration was filed, SCM was not using the SCM mark in commerce with the applied-for services referenced in the application primarily for the benefit of someone other than SCM, that SCM did not have a bona fide intent to use the SCM mark in such a manner, and that SCM does not currently use the SCM mark in such a manner.  Id. ¶¶ 31-32, 39-46.  SRI further alleges that, on the date the SCM applications were filed, SCM was not using the SOMERA mark in commerce with the applied-for services referenced in the applications primarily for the benefit of someone other than SCM, that SCM did not have a bona fide intent to use the SOMERA mark in such a manner, and that SCM does not currently use the Somera mark in such a manner.  Id. ¶¶ 23-25, 33-38.

II.  LAW GOVERNING MOTIONS TO DISMISS

We evaluate a motion to dismiss counterclaims under the same standard as a motion to dismiss a complaint.  See, e.g., A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) (citations omitted).  A party may move to dismiss a pleading pursuant to Federal Rule of Civil Procedure 12(b)(6) where the pleading "fail[s] to state a claim upon which relief can be granted."  To survive such a motion, a pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  We "must accept all well-pleaded facts as true and

construe the answer and counterclaims in the light most favorable to the nonmoving party."

Meridien Int'l Bank, 23 F. Supp. 2d at 445 (citation omitted); accord Gant v. Wallingford Bd. of

Educ., 69 F.3d 669, 673 (2d Cir. 1995).  As the Supreme Court noted in Iqbal,

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged.  The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.

Iqbal, 556 U.S. at 678 (citations omitted).  "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct," a pleading is insufficient under

Federal Rule of Civil Procedure 8(a) because it has merely "alleged — but it has not shown —

that the pleader is entitled to relief."  Id. at 679 (brackets and internal quotation marks omitted)

(quoting Fed. R. Civ. P. 8(a)(2)).

III.  DISCUSSION

We first address SCM's argument, SCM Mem. at 5-6; SCM Reply at 5-9, that Sections

14 and 15 of the Lanham Act preclude the registration counterclaim, Answer ¶¶ 39-46.  We then

address whether the Court may properly consider the applications counterclaim, id. ¶¶ 33-38, and

whether it is adequately pled.

A.  The Registration Counterclaim

In its registration counterclaim, SRI alleges that SCM was not using the SCM mark in

commerce in connection with the services identified in the application for the SCM mark at the

time the application was filed, id. ¶¶ 31, 40; that SCM did not have a bona fide intent to use the

SCM mark in such a manner, id. ¶ 41; and that SCM was not using the SCM mark in such a

manner when the SCM mark application matured to registration, id. ¶ 42.  SRI alleges that the

Declaration of Incontestability, filed for the SCM Registration on July 16, 2019, was "invalid,"

id. ¶ 43, and that the SCM Registration "is void ab initio," id. ¶ 45.

A court may adjudicate a request to cancel a trademark under 15 U.S.C. § 1119 "in any

action involving a registered mark."  However, under Section 14 of the Lanham Act, codified at

15 U.S.C. § 1064, a "petition to cancel a registration of a mark" must be made "[w]ithin five

years from the date of the registration of the mark" unless certain exceptions listed in Section

1064 apply — such as a mark becoming generic, or the registrant no longer controlling the mark,

or where there is a showing that the mark was obtained fraudulently, see id. § 1064(3), (5).  SRI,

however, does not assert that any of the statutory exceptions apply to their counterclaim.

Instead, it asserts that the registration was "void ab initio."  Answer ¶ 45.

The problem with SRI's counterclaim as to the registration is that "[u]nder § 1064(3),

petitions for cancellation of a mark registered for five years may be brought only for a limited set

of reasons, including fraudulent registration or if the mark has become generic.  Void ab

initio . . . is not one of these reasons . . . ."  SPFM L.P. v. Midmark Corp., 2017 WL 5235670, at

*7 (W.D. Tex. July 31) (citation omitted), adopted by 2017 WL 5484692 (W.D. Tex. Sept. 14,

2017); accord NetJets Inc. v. IntelliJet Grp., LLC, 678 F. App'x 343, 348 (6th Cir. 2017).  Thus,

courts have commonly rejected attempts to evade section 1064's requirement by relying on a

non-enumerated exception.  See, e.g., NetJets, 678 F. App'x at 348; Univ. of Ky. v. Ky.

Gameday, 2015 WL 9906634, at *2 (T.T.A.B. Aug. 3, 2015)[3] ("The nonuse claim in the

---

[3]  The Second Circuit has "noted on many occasions that the decisions of the TTAB, while not binding on courts within this Circuit, are nonetheless to be accorded great weight." Buti v. Perosa, S.R.L., 139 F.3d 98, 105 (2d Cir. 1998) (citation and internal quotation marks

counterclaim, which alleges that Opposer's underlying application was void ab initio because the subject mark was not in use in commerce at the time the underlying application was filed, is not enumerated under Trademark Act Sec. 14(3), and is not available against a registration which is more than five years old."); Pennwalt Corp. v. Sentry Chem. Co., 1983 WL 50161, at *9 (T.T.A.B. July 1, 1983) ("[T]here is nothing in Section 14(c) which admits [non-use in commerce] as a ground for cancellation of a registration after five years have elapsed, unless the misstatement was with fraudulent intent.") (citations omitted).

The cases cited to the contrary by SRI largely involve situations where one of Section 1064(3)'s exceptions, such as abandonment or fraud, was applicable, or where Sections 1064's five-year limitation was not at issue.  See, e.g., ShutEmDown Sports, Inc. v. Carl Dean Lacy, 102 U.S.P.Q.2d 1036, at *11 (T.T.A.B. 2012) (deciding trademark validity on abandonment grounds — one of the exceptions enumerated in Section 1064(3) — and noting the court "need not discuss the remaining elements of the fraud claim or render a decision on it, as we have already determined that the registration must be cancelled in its entirety . . . on the abandonment claim."); see also Couture v. Playdom, Inc., 778 F.3d 1379, 1380 (Fed. Cir. 2015) (Section 1064 limitation period not at issue); Buti, 139 F.3d 98 at 100-101, 106 (same); Chere Amie, Inc. v. Windstar Apparel, Corp., 2002 WL 460065, at *3-4 (S.D.N.Y. Mar. 26, 2002) (same).  The case of Aycock Engineering, Inc. v. Airflite, Inc., 560 F.3d 1350 (Fed. Cir. 2009), concerned a mark listed on the Supplemental Register, not the Principal Register.  Id. at 1354.  Section 1064's limitations only apply to the Principal Register.  Marks on the Supplemental Register can be cancelled at any time for any reason.  See 37 C.F.R. § 2.111(b); accord NetJets, 678 F. App'x at

omitted).

350 ("Marks listed on the Supplemental Register, however, can be cancelled at any time for any reason.") (citing 37 C.F.R. § 2.111(b)).

SRI relies most heavily on Procter & Gamble Co. v. Johnson & Johnson Inc., 485 F. Supp. 1185 (S.D.N.Y. 1979), aff'd, 636 F.2d 1203 (2d Cir. 1980), in which the court noted that "[i]t would be odd indeed if, while a mark acquires no rights without use, non-use, continued for a long enough time and accompanied by an inaccurate affidavit proclaiming use, would bring it to life." Id. at 1208. SRI cites this statement, SRI Opp. at 10, for the proposition that Section 1064's five-year limitation is inapplicable to claims of non-use at registration. However, as one court has noted, the court in Procter & Gamble "assumed that its power under § 1119 was limited by § 1064, and ordered cancellation because the defendants had made a sufficient showing under § 1064." NetJets, 678 F. App'x at 350 (citation omitted). Thus, the statement is dictum. Additionally, to the extent Procter & Gamble can be read to conclude that a court's cancellation of a trademark registration under Section 1119 is not limited by Section 1064, such a conclusion is at odds with the Supreme Court's later decision in Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189 (1985), in which the Supreme Court stated definitively that "[w]ithout regard to its incontestable status, a mark that has been registered five years is protected from cancellation except on the grounds stated in [Lanham Act] §§ 14(c) and (e)." Id. at 197.

We recognize that the Eleventh Circuit has opined that "[t]he Supreme Court purposefully avoided holding" in Park 'N Fly "that all non-enumerated defenses to incontestability were foreclosed, by declining to decide whether estoppel or laches (both non-enumerated defenses at that time) were available as defenses to an incontestable registration." Wilhelm Pudenz, GmbH v. Littlefuse, Inc., 177 F.3d 1204, 1209 (11th Cir. 1999). SRI cites

Wilhelm Pudenz, GmbH, SRI Opp. at 10-11, as supporting their registration counterclaim. However, Wilhelm Pudenz, GmbH involved functionality — an issue not raised here — as a defense to incontestable registrations.  Id. at 1210.  The court concluded that the language of 15 U.S.C. § 1115(b) — the subsection containing defenses to a finding of incontestability under Section 1065 — "read in the context of the entire Lanham Act and against the history of the functionality doctrine simply [did] not evince an intent to preclude functionality as a defense to incontestable registrations."  Id.  And, as one court has noted, Wilhelm also relied on "amendments to the statute [that] explicitly added functionality as an enumerated defense under § 1115(b), which further supported the court's determination that the amendments codified existing law and functionality had always been a recognized defense to an incontestable registration."  NetJets, 678 F. App'x at 349.  Here, by contrast, "there have been no such subsequent changes to the statute adding non-use as a ground for cancellation under the Lanham Act that would support an inference that non-use is an existing, though unenumerated ground for cancellation."  Id.  Accordingly, we do not find Wilhelm Pudenz, GmbH instructive here. Tellingly, the Fourth Circuit in Shakespeare Co. v. Silstar Corp. of Am., 9 F.3d 1091 (4th Cir. 1993), rejected an effort to cancel a registration on the ground of functionality on the simple ground that "functionality is not one of the statutorily enumerated grounds [under 15 U.S.C. § 1064(3)] upon which a trademark registered more than five years may be canceled."  Id. at 1092.[4]

_____

[4]  SRI also cites Brittingham v. Jenkins, 914 F.2d 447 (4th Cir. 1990), which allowed a cancellation of registration for lack of continuous use at the time of registration.  The court's decision, however, applied 15 U.S.C. § 1065, and did not purport to rule on Section 1064.  Id. at 454.

Accordingly, we conclude that Section 1064's five-year limitation period bars SRI's counterclaim for cancellation of the SCM registration.[5]

B.  The Applications Counterclaim

SCM seeks to dismiss the counterclaim attacking its pending trademark applications on the ground that it is not authorized by statute.  See SCM Mem. at 4-5; SCM Reply at 2-5.  In response, SRI relies on Section 37 of the Lanham Act, codified at 15 U.S.C. § 1119, which provides that a "court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to" an "action involving a registered mark."[6]  Id. This statute specifically addresses the determination of rights in "registrations."  There is no similar provision with respect to "applications."  Rather, the statute governing applications for trademarks contemplates that applications will be adjudicated by the PTO.  15 U.S.C. § 1062.  A party opposing an application has the right to be heard by the PTO.  See id. § 1063(a).  Thus, courts have long recognized that a party bringing a trademark application may not evade this statutory scheme by bringing a declaratory judgment seeking to have a court consider the merits of a pending application.  See, e.g., Goya Foods, Inc. v. Tropicana Prod., Inc., 666 F. Supp. 585, 588 (S.D.N.Y. 1987) ("The Declaratory Judgment Act may not be used to unnecessarily disrupt registration proceedings pending in the Patent and Trademark Office."), rev'd on other grounds,

_____

[5]  SRI suggests that we should "construe[]" its counterclaim as a claim for fraudulent procurement under 15 U.S.C. § 1115(b).  SRI Opp. at 12 n.7.  While we are doubtful that the answer states a claim of fraud, we decline the invitation to "construe" the answer to make allegations that it does not in fact make.

[6]  In its Answer, SRI also refers to 15 U.S.C. § 1051.  Answer ¶ 3.  In its briefing, however, it points to no portion of Section 1051 as providing authority for the counterclaims.

10

846 F.2d 848 (2d Cir. 1988); accord 5 McCarthy on Trademarks and Unfair Competition

§ 30:113.50 (5th ed.) ("[T]he general rule is that an applicant whose mark is opposed before the

Trademark Board, cannot short-circuit the administrative process by filing suit for declaratory

judgment in the federal courts, asking the court to utilize Lanham Act § 37 to decide the fate of

the pending application.").

The rule has evolved somewhat differently, however, where an application relates to a

registration that is already properly before the court in a proceeding brought under Section 1119.

Several decades ago, in Continental Connector Corp. v. Continental Specialties Corp., 413 F.

Supp. 1347 (D. Conn. 1976), then-district Judge Jon O. Newman considered a counterclaim that

sought to attack a pending trademark application that related to a registered mark at issue in the

lawsuit.  Judge Newman concluded as follows:

> Defendants appear to concede that this Court has no independent original
> jurisdiction to adjudicate the counterclaim.  It has been stated that the 'courts of
> the United States have no jurisdiction over registration proceedings except that
> appellate jurisdiction given them by the Trade-Mark Act.'  Merrick v. Sharp &
> Dohme, Inc., 185 F.2d 713, 717 (7th Cir. 1950) (dictum).  See 15 U.S.C.
> §§ 1052(d), 1071(b).  There is no question that jurisdiction over registration
> proceedings has been confided by Congress in the Patent and Trademark Office.
> 15 U.S.C. § 1051 et seq.  Yet, in some cases, a district court, exercising original
> jurisdiction, has power to order a registration.  See, e.g., Massa v. Jiffy Products
> Co., 240 F.2d 702 (9th Cir. 1957); cf. Avon Shoe Co. v. David Crystal, Inc., 279
> F.2d 607, 614-15 (2d Cir. 1960).  In Massa the authority to order such relief was
> founded upon 15 U.S.C. § 1119, which permits a court in any action 'involving a
> registered mark' to 'rectify the register with respect to the registrations of any
> party to the action.'
>
> The parties appear to assume that § 1119 permits a court to order registration of a
> mark only when it otherwise has jurisdiction to adjudicate a claim involving that
> same mark.  That was the situation in Massa, where the plaintiff alleged
> infringement of its registered mark, and the court found that defendant owned the
> mark and was entitled to registration of it.  The statute is not so narrowly worded.
> By giving a court authority to rectify the register with respect to the 'registrations'
> of any party, the statute appears to permit rulings on marks other than the one on

11

> which a particular claim is founded.  The statute permits a court to act in 'any
> action involving a registered mark.'  Of course, even under § 1119, a court,
> exercising jurisdiction over a suit involving a registered mark, would not be
> expected to entertain unrelated claims for registration of other marks.

Id. at 1348-49.

In other words, Continental Connector Corp. held that the language of Section 1119 permitted a court to "rectify" the register as to an application for a registration as long as the applicant was a party to the lawsuit and the application was for a mark sufficiently related to a registered mark over which the court had jurisdiction.  Id.

A number of courts have followed the holding in Continental Connector Corp., as has been recognized in a leading treatise.  See 5 McCarthy on Trademarks and Unfair Competition § 30:113.50 (5th ed.) ("[S]ome decisions permit a federal court to determine the registerability of an as-yet-unregistered mark in a lawsuit in which a different registered mark is involved" as long as "there is a close nexus between the issues in the pending application proceeding and those in the federal court dispute involving the registered mark").  For example, the court in Wind Turbine Indus. Corp. v. Jacobs Wind Elec. Co., Inc., 2010 WL 11561265 (D. Minn. Mar. 23, 2010), held that it had authority to order cancellation of an application for a mark that was "directly related" to the subject matter of the suit.  Id. at *4.  Other cases have similarly held. See, e.g., DeSoto, Inc. v. Margo Int'l II, Inc., 1988 WL 132083, at *2 (N.D. Ill. Dec. 7, 1988) ("Even though serial no. 700,301 [for POWER PLUS mark] has not been registered, this lawsuit is an action involving . . . the registered mark POWER PLUS, serial no. 830,337. . . . [T]herefore, the court is not entertain[ing] unrelated claims for registration of other marks.") (citation and internal quotation marks omitted); accord Airs Fragrance Prod., Inc. v. Clover Gifts, Inc., 395 F. App'x 482, 485 (9th Cir. 2010) ("The district court did not abuse its discretion by

ordering the parties to withdraw any pending trademark applications relating to the Airs family

of trademarks . . . .”); Bd. of Regents of U. of Tex. Sys. v. Reynolds, 2019 WL 4980445, at *4

(W.D. Tex. July 31, 2019) (“In order for the Court to exercise jurisdiction over pending

applications, one of the parties must have a registered trademark which has a sufficient nexus

with the dispute over the pending applications.”) (citation and internal quotation marks omitted)

(denying summary judgment in challenge to trademark application); Amy’s Ice Creams, Inc. v.

Amy’s Kitchen, Inc., 60 F. Supp. 3d 738, 744 (W.D. Tex. 2014) (district court may order relief

with respect to trademark applications pending before the USPTO where “one of the parties” has

a registered trademark “which has a sufficient nexus with the dispute over the pending

applications.”); Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assur. Co., 1995 WL

723186, at *7 (E.D. Pa. Nov. 14, 1995) (“A party may bring an action under § 1119 even if it

does not hold a federally registered mark, so long as the federally registered mark of the other

party is at issue.”) (citation omitted).

     Here, the nexus between the SCM applications and the SCM registration is evidenced by

the following allegations.  SCM’s applications were submitted for use of the “SOMERA” mark

with services in International Classes 36 and 37.  Answer ¶¶ 19-20.  SCM also owns the

registered trademark “Somera Capital Management” in connection with services in International

Classes 36 and 37.  Id. ¶¶ 8, 13.  SRI alleges that SCM’s true intention in filing the SCM

applications was to strengthen its position with regard to the underlying litigation concerning the

“Somera Capital Management” trademark.  Id. ¶ 30.

     SCM does even contest that the counterclaim would be proper if this Court follows the

holding in Continental Connector Corp. and its progeny.  Instead, SCM urges that we should not

follow <u>Continental Connector Corp.</u> at all, citing a number of cases where courts declined to

consider challenges to trademark applications.  <u>See</u> SCM Mem. at 4-5; SCM Reply at 2-5.  But

none of these cases actually attack the reasoning of <u>Continental Connector Corp.</u>  Instead, in

each instance the case either did not consider whether the registered mark had a sufficient nexus

to the pending applications, <u>see</u>, <u>e.g.</u>, <u>Khaled v. Bordenave</u>, 2019 WL 1894321, at *4 (S.D.N.Y.

Apr. 29, 2019); <u>Maduka v. Tropical Nats., Ltd.</u>, 409 F. Supp. 3d 337, 367 (E.D. Pa. 2019);

<u>Kohler Co. v. Bold Int'l FZCO</u>, 422 F. Supp. 3d 681, 739 (E.D.N.Y. 2018), or the court found

that no such nexus exists, <u>see</u> <u>Johnny Blastoff Inc. v. L.A. Rams Football Co.</u>, 1998 WL 766703,

at *12 (W.D. Wis. June 24, 1998) (no "authorization under Section 1119 to rule on initial

registerability where that determination was so legally and factually disconnected from the

accompanying dispute involving the registered mark"), <u>aff'd</u>, 188 F.3d 427 (7th Cir. 1999).

The remaining cases cited by SCM fail to support a deviation from <u>Continental</u>

<u>Connector Corp.</u> for other reasons.  In <u>Universal Tube & Rollform Equip. Corp. v. YouTube,</u>

<u>Inc.</u>, 504 F. Supp. 2d 260 (N.D. Ohio 2007), no registered trademark was at issue in the suit and

the court granted plaintiff's motion to dismiss the defendant's counterclaim because defendant

had "failed to tie its claim to any existing registration."  <u>Id.</u> at 266-67.  Similarly, in <u>Zany Toys,</u>

<u>LLC v. Pearl Enterprises, LLC</u>, 2015 WL 404644 (D.N.J. Jan. 28, 2015), the court noted "some

courts have found that federal courts may appropriately determine the registerability of an as-yet

unregistered mark in an action in which a registered mark is involved as well," but declined to do

so because in that case there was "no registered mark held by either party."  <u>Id.</u> at *6-7 (citation

and internal quotation marks omitted).  Finally, in <u>GMA Accessories, Inc. v. Idea Nuova, Inc.</u>,

157 F. Supp. 2d 234 (S.D.N.Y. 2000), the court specifically noted that the defendant in that case

had cited "no authority for the proposition that § 37 permits a district court to cancel a pending trademark application"; it thus did not address case law holding that a court may exercise jurisdiction over a trademark application where there is a sufficient nexus between a registered mark and the application.  Id. at 241.

Accordingly, we reject SCM's argument that the Court does not have authority to consider SRI's counterclaim relating to SCM's trademark applications.

C.  Whether the Applications Counterclaim is Adequately Pled

SCM separately argues that the applications counterclaim is "insufficiently pled" because the counterclaim's allegations do not comply with Fed. R. Civ. P. 9(b) and many allegations are upon "information and belief."  SCM Mem. at 6-8; SCM Reply at 9.

The argument regarding Rule 9(b) is easily disposed of since that rule applies to claims "alleging fraud or mistake."  SRI does not assert that it is making claims of "fraud or mistake."  And SCM has not argued that SRI can only proceed with its substantive claim attacking the applications if allegations of "fraud or mistake" are made.

As for pleading on "information and belief," the Second Circuit has made clear, in applying the Iqbal/Twombly standard, that a claimant is not prevented from pleading facts on information and belief when the facts alleged are "peculiarly within the possession and control of the [opposing party] or where the belief is based on factual information that makes the inference of culpability plausible."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (citations and internal punctuation omitted).

The only specific allegations that SCM complains about are those alleging that "SCM lacked a bona fide intent to use its mark in commerce in connection with 'each of the services'

15

set forth in Applications." See SCM Mem. at 6 (citing Answer ¶¶ 34-35).  But this proposition is supported by a separate allegation that the USPTO issued an office action refusing registration for the SOMERA mark because the specimens of use SCM submitted did not in fact show use of the marks with their respective identified services.  Answer ¶¶ 21-22.  One can draw a "reasonable inference," Iqbal, 556 U.S. at 678, from these allegations that SCM was not in fact using the marks in commerce in connection with any of those services when it filed its applications.

IV.  CONCLUSION

For the foregoing reasons, SCM's motion to dismiss (Docket # 22) should be granted as to the registration counterclaim (Count II) but denied as to the applications counterclaim (Count I).

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be directed to Judge Woods.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), (b), (d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

16

SO ORDERED

Dated: May 15, 2020
      New York, New York

 

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge